## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

KYLE BUTLER RASHLEY, on behalf   :
of himself and others similarly situated,  :  CASE NO. 9:24-cv-80478
   :
     Plaintiff,             :
   :
v.                      :
   :
FIRST ENROLL, LLC, a New Jersey  :
limited liability company, and    :
ACCESS ONE CONSUMER     :
HEALTH, INC., a Florida corporation.  :

     Defendants.
_____/

## CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND
## PERMANENT INJUNCTIVE RELIEF REQUESTED,
## DEMAND FOR A JURY TRIAL

Plaintiff KYLE BUTLER RASHLEY (hereinafter referred to as "Plaintiff"),

individually and on behalf of all others similarly situated, alleges on personal

knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.    Telemarketing calls are intrusive. A great many people object to these

calls, which interfere with their lives, tie up their phone lines, and cause confusion

and disruption on phone records. Faced with growing public criticism of abusive

telephone marketing practices, Congress enacted the Telephone Consumer

Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47

U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply,

the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.     Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendants made telemarketing calls (or texts) to numbers on the National Do Not Call Registry, including his own.  Plaintiff also brings this action under the Florida Do Not Call Act, § 501.059, *et seq*., and the Florida Telemarketing Act, § 501.616, Fla. Sta., *et seq*. (collectively, the Florida Do Not Call Act and Florida Telemarketing Act will be referred to herein as the "FTCPA").

4.     Because telemarketing campaigns typically use technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls or texts.

5.     A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## **PARTIES**

6.     Plaintiff Kyle Butler Rashley is an individual residing in West Palm Beach, Florida.

7.      Defendant First Enroll, LLC is a New Jersey limited liability company located in Tinton Falls, New Jersey.

8.      Defendant Access One Consumer Health, Inc. is a Florida corporation located in Greenville, South Carolina.

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

10.      This Court has general jurisdiction over Defendant Access One Consumer Health, Inc because it is incorporated in this State.

11.      This Court has specific jurisdiction over both Defendants because Defendants purposefully availed themselves to the Florida marketplace by directing their telemarketing calls to Florida and to Plaintiff's cellular telephone, which is located in Florida.

12.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because the telemarketing calls that are the subject of this lawsuit were sent to Plaintiff while he was resident of and present in this District.

## TCPA BACKGROUND

13.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer

4

Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

14.    § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

16.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.   47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## **FLORIDA TCPA BACKGROUND**

18.     Florida's Do Not Call Act and Telemarketing Act are in many ways broader than the federal TCPA, providing even stronger protections to recipients of telemarketing calls in Florida than the TCPA.

19.     Like the TCPA, FTCPA prohibits making telemarketing calls to persons that requested to not be called in the future: "A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission." § 501.059(5).

20.     Further, the FTCPA is broader than the TCPA in its definition of the types of telephone systems through which telemarketers are not allowed to place any solicitation calls without prior express consent.  The FTCPA provides that a "person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." § 501.059(8)(a). Unlike the TCPA, there is no mention of random number generation, and it is not required under the FTCPA for an autodialer to use a random or sequential number

generator.  As alleged herein, Defendants used an automated system for the selection or dialing of telephone numbers to call Plaintiffs and class members.

21.     Under the FTCPA, "[t]here is a rebuttable presumption that a telephonic sales call made to any area code in [Florida] is made to a Florida resident or to a person in [Florida] at the time of the call."  § 501.059(8)(d).

22.     The FTCPA allows Plaintiffs and class members to recover actual damages or $500, whichever is greater, and allows a court to treble the award if the courts find that the violation is knowing or willful.  § 501.059(10)(a),(b).  The FTCPA also provides for attorneys' fees to the prevailing party.  § 501.059(11)(a).

23.     The FTCPA also states that "a commercial telephone seller or salesperson making a commercial telephone solicitation call may not: (a) Intentionally act to prevent transmission of the telephone solicitor's name or telephone number to the party called when the equipment or service used by the telephone solicitor is capable or creating and transmitting the telephone solicitor's name or telephone number. (b) Use technology that deliberately displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller.  A commercial telephone seller or salesperson who makes a call using such technology commits a misdemeanor of the second degree." § 501.616(7)(a),(b).  As discussed herein, Defendants routinely spoof and conceal

the number from which they are calling, and often conceal their name from call recipients' Caller IDs.

## **FACTUAL ALLEGATIONS**

24.     Defendants are "persons" as the term is defined by 47 U.S.C. § 153(39).

25.     At no point has the Plaintiff sought out or solicited information regarding Defendant's goods and services prior to receiving the telemarketing calls at issue.

Calls to Plaintiff

26.     Defendant Access One Consumer Health, Inc. is a provider of health discount plans that provide customers with discounts at certain health care providers for medical services.[1]     Defendant generates substantial business through telemarketing.  In furtherance of its telemarketing efforts, Defendant also employes third parties like Defendant First Enroll, LLC to contact potential customers on its behalf.

27.     Plaintiff Rashley's cellular telephone number, 561-XXX-8422, is a residential telephone line.

28.     The telephone number has been on the National Do Not Call Registry since February 20, 2022.

---

[1] https://accessonedmpo.com/

29.     Despite this, Plaintiff received many telemarketing calls from Defendants and/or one of their agents, including calls from Defendants from the phone number (561) 363-4937 on January 30, 2024 and January 31, 2024. Plaintiff rejected the January 30, 2024 phone call.  Upon information and belief, and upon investigation of counsel, Plaintiff alleges that these calls were placed by Defendant First Enroll, LLC acting pursuant to a contract with Defendant Access One Consumer Health, Inc., acting as its agent, for the purpose of soliciting Defendant Access One Consumer Health, Inc's health discount plans to Plaintiff. Because neither Defendants operate from the (561) area code, Plaintiff alleges that Defendants intentionally spoofed their Called ID to make it appear that they were calling from a local Florida number, as Plaintiff's phone number also starts with a 561 area code.  Spoofing phone numbers to appear local is a frequent technique by telemarketers used to increase the chances that the call is answered by consumers, tricking them into thinking that they are getting a local call.

30.     Plaintiff answered the January 31, 2024 call.  When Plaintiff answered the call, he heard a distinctive beep before being connected to one of Defendants' agents or employees, a tell-tale sign that the call was placed using an automated system for the selection and dialing of telephone numbers.  After the beep, one of Defendants' agents or employees answered the phone and began soliciting health discount plans.  However, Defendants' agent or employee first referred to Plaintiff

by a different name (not his own), suggesting that Defendants were seeking to talk to someone other than Plaintiff.  Plaintiff continued with the call to ascertain the identity of the caller, and for no other purpose.  Defendants' agent or employee asked questions about potential health issues, and whether Plaintiff was interested in health insurance in the next thirty (30) days.  The agent or employee then transferred Plaintiff to a second agent.

31.    The second agent or employee continued asking Plaintiff questions about health insurance and generally trying to solicit business for Defendant Access One Consumer Health, Inc's health discount plans.  When Plaintiff asked Defendants' agent or employee to identify who he worked for, the agent or employee gave a generic name – something to the effect of "health enrollment center."  Because Defendants' agent or employee would not give the concrete, specific name of the entity on whose behalf he was calling, Plaintiff continued with the call and provided the agent or employee with his personal information including his email and a form of payment.

32.    After obtaining a form of payment and personal contact information from Plaintiff, Defendants' agent or employee sent a solicitation text message to Plaintiff's cellular telephone number.

33.     The text message was a link to a website, with the address beginning with the following: https://manage.firstenroll.com/.[2]  The link directs Plaintiff to a still apparently live quote for health discount plan.  The policy is described as a "limited benefit health insurance plan" and provides a policy number.  The policy is also styled as a contract.  In one portion, the policy states that "This agreement is between you and Access One Consumer Health."  The policy also provides the following "name and address of the licensed discount medical plan organization: Access One Consumer Health, 84 Villa Road, Greenville, SC 29615 … www.AccessOnedmpo.com."  The address matches that of the headquarters of Defendant Access One Consumer Health, Inc.  And, the provided website www.AccessOnedmpo.com lists "Access One Consumer Health, Inc." as the owner of the website.

34.     Further down in the policy, the document lists "First Enroll" of "4000 NJ 66 Suite 348, Tinton Falls, NJ 07753" as the authorized payment processor to which all payments must be submitted for the quoted policy to go into effect.  It also provides members@firstenroll.com as a contact email.  As discussed above, Defendant First Enroll, LLC is headquartered in Tinton Falls, New Jersey.  The

---

[2] The full address has been omitted from the Complaint because it links to a live website containing Plaintiff's sensitive personal information, including date of birth, email and phone numbers, home address, as well as the identities, genders, and birth dates of his spouse and children.

domain firstenroll.com is owned and operated by Defendant First Enroll, LLC.  On the firstenroll.com website, Defendant First Enroll, LLC describes itself as a "one stop Third Party Billing solution for all of your Health Insurance billing and enrollment needs – from lead to payment and recurring payment to billing customer service."  It goes on to market its services to insurance companies as "a powerful solution to manage your sales processes … [and] marketing."  On its "services" page, Defendant First Enroll, LLC advertises services to health insurance companies like Defendant Access One Consumer Health, Inc. such as, *inter alia*, onboarding customers, assistance with enrollment, and assistance with billing and tracking customers and members.

35.    Around the time of these calls, Plaintiff was not in the market for or researching health insurance or health discount plans on the internet, in person, or otherwise.  At the time of these calls (and currently) Plaintiff had health insurance through his wife's employer and was not interested in alternative health insurance. Plaintiff has never interacted with Defendants in any manner, other than through the calls and correspondence described above.  Plaintiff did not consent to receive these calls.

36.    As to Defendant First Enroll, LLC, Plaintiff alleges direct liability because it was the entity that made the calls to Plaintiff.  As to Defendant Access One Consumer Health, Inc., Plaintiff alleges that it should be held vicariously

liable for the conduct of its agent, Defendant First Enroll, LLC.  Defendant First Enroll, LLC explicitly promotes its promotional and marketing services on behalf of insurance companies like Defendant First Enroll, LLC.  Based on Defendant First Enroll, LLC's business model, a contract must exist between the two Defendants.  The only health insurance company (or health discount company) mentioned in the quote provided to Plaintiff was Defendant Access One Consumer Health, Inc.  The agents making the calls hold themselves out as persons authorized to market Defendant Access One Consumer Health, Inc.'s services.  At a minimum, Defendant Access One Consumer Health, Inc. accepts the health discount contracts solicited by Defendant First Enroll, LLC, and ratifies Defendant First Enroll, LLC's conduct.  A reasonable person would understand the third party initiating the calls would be doing so at the direction and with the authority of Defendant Access One Consumer Health, Inc.

37.     Plaintiff and all members of the class defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance.  The calls also occupied Plaintiff's and class members' telephone lines, used up their time, and prevented them from receiving legitimate communications.

## <u>CLASS ACTION ALLEGATIONS</u>

38.     As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil

Procedure, Plaintiff bring this action on behalf of a national class of all other

persons or entities similarly situated throughout the United States.  Plaintiff also

brings this action on behalf of a Florida class or persons or entities similarly

situated throughout Florida.

39.     The class of persons that Plaintiff proposes to represent are defined as

follows (collectively referred to as the "Classes"):

> **<u>National Do Not Call Registry Class</u>**: All persons in the
> United States whose numbers are listed on the national do-
> not-call registry, and received two or more telemarketing
> calls within any 12-month period from Defendants or their
> agents to their residential telephone number 31 or more
> days after the telephone number was listed on the national
> do-not-call registry at any time in the period that begins
> four years before the filing of the complaint in this action
> to the date that class notice is disseminated (the "Class
> Period").

> **<u>Florida Telemarketing Class</u>**: All Florida residents that
> received a telephonic sales call from Defendants or their
> agents using an automated system for the selection and
> dialing of telephone numbers at any time from July 1, 2021
> through the date the Court certifies the class for whom
> Defendants do not possess a written agreement that (1)
> bears the signature of the called party, (2) clearly
> authorizes Defendants or their agents to place telephonic
> sales call using an automated system for the selection and
> dialing of telephone numbers, (3) includes the telephone

number to which the signatory authorizes a telephonic sales call to be delivered, and (4) includes a clear and conspicuous disclosure informing the called party that (a) by executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and (b) he or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

40. Plaintiff represents, and is a member of, the proposed Classes. Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, any person who made a transaction with Defendants in the preceding 18 months before receiving a telemarketing call, any person who has executed a signed, written agreement between the person and Defendants which states that the person agrees to be contacted by Defendants and includes the telephone number to which the calls may be placed, any Judge and/or Magistrate Judge to whom this action is assigned, and any member of such Judges' staffs and immediate families.

41. The Classes, as defined above, are identifiable through telephone records and telephone number databases.

42. The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

43.     Individual joinder of these persons is impracticable.

44.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

45.     Plaintiff is a member of the Classes and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the class members.

46.     Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

47.     This class action complaint seeks injunctive relief and money damages.

48.     There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

a.      whether Defendants systematically made multiple telephone calls to members of the Classes;

b.      whether Defendants made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls; and

     c.     whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

49.    Plaintiff's claims are typical of the claims of the Classes.

50.    Plaintiff's claims, like the claims of Classes, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

51.    Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

52.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

53.    A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are

small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

54.     Defendants acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

<u>**FIRST CAUSE OF ACTION**</u>
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

55.     Plaintiff repeats his prior allegations of this Complaint from paragraphs 1-54 and incorporates them by reference herein.

56.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute

numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

57.     Defendants' violations were negligent, willful, or knowing.

58.     As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

59.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of § 501.059(8)(a), Fla. Stat.**
**(On Behalf of Plaintiff and the Florida Telemarketing Class)**

60.     Plaintiff repeats his prior allegations of this Complaint from paragraphs 1-54 and incorporates them by reference herein.

61.     The FTCPA provides that a "person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party."  § 501.059(8)(a).

62.     Defendants and their agents knowingly and willfully called Plaintiff and members of the Florida Telemarketing Class in violation of 501.059(8)(a) using an automated system for the selection and dialing of telephone numbers.  Further, for Plaintiff and members of the Florida Telemarketing Class, Defendants do not possess a written agreement that (1) bears the signature of the called party, (2) clearly authorizes Defendants or their agents to place telephonic sales call using an automated system for the selection and dialing of telephone numbers, (3) includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered, and (4) includes a clear and conspicuous disclosure informing the called party that (a) by executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and (b) he or she is not required

to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

63.     Plaintiff, individually, and on behalf of the other members of the Florida Telemarketing Class, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under § 501.059(10)(a).   They also seek to recover attorney's fees and costs under § 501.059(11)(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     Certification of the proposed Classes;

B.     Appointment of Plaintiff as representative of the Classes;

C.     Appointment of the undersigned counsel as counsel for the Classes;

D.     A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA and the FTCPA;

E.     An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

F.      An award to Plaintiff and the Classes of damages, as allowed by law;

G.      An award of attorneys' fees, expenses, and costs; and

H.      Orders granting such other and further relief as the Court deems

necessary, just, and proper.

### **JURY DEMAND**

Plaintiff requests a jury trial on all issues so triable.

Dated:  April 17, 2024              Respectfully  submitted,


                                    FERNEE KELLY LAW

                                       /s/ *Charlotte F. Kelly*
                                    Charlotte F. Kelly, Esq.
                                    Fla Bar No. 0090105
                                    14502 N. Dale Mabry Hwy #200
                                    Tampa, FL 33618
                                    charlotte@ferneekellylaw.com

                                    SMITH KRIVOSHEY, PC

                                    By:   /s/ *Yeremey Krivoshey*
                                            Yeremey Krivoshey

                                    Yeremey O. Krivoshey (SBN 295032) (*pro
                                    hac vice* pending)
                                    166 Geary Str STE 1500-1507
                                    San Francisco, CA 94108
                                    Telephone: 415-839-7077
                                    Facsimile: (888) 410-0415
                                    E-Mail: yeremey@skclassactions.com

                                    SMITH KRIVOSHEY, PC
                                    Joel D. Smith (SBN 244902) (*pro hac vice*
                                    pending)

22

867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*
*and the Proposed Class*